EDWARD C. MOORE CO. v. AMERICAN CREDIT INDEMNITY CO. OF
NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 30, 1915.)

1. INSURANCE ☞668—ACTION ON CREDIT INDEMNITY POLICY—BREACH OF
WARRANTIES—DIRECTION OF VERDICT.
    Where, in an action on a credit indemnity bond, the defense was that
warranties of plaintiff's application to the effect that the amount of out-
standings past due were but a small proportion of the entire amount,
and that there were no outstandings under extension, were untrue, and
the evidence conclusively showed that about two-thirds of the outstand-
ings, which according to the uncontroverted evidence embraced, not only
the accounts unpaid, but bills receivable, including notes for unpaid ac-
counts, were past due, and that more than one-half were under extension,
a verdict should have been directed for defendant.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–
1770; Dec. Dig. ☞668.]

2. INSURANCE ☞668—ACTION ON INDEMNITY POLICY—SUBMISSION OF ISSUES
—EVIDENCE—BREACH OF WARRANTIES—ESTOPPEL.
    Where the credit indemnity policy sued on provided that the terms of
the policy could not be modified or waived except by the president or
secretary of the defendant company, evidence that defendant's soliciting
agent represented that the filling out of the blanks in the application was
a mere matter of form did not authorize submitting to the jury the ques-
tion whether defendant was estopped from claiming that the plaintiff
company had breached the warranties contained in its application.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–
1770; Dec. Dig. ☞668.]

3. INSURANCE ☞378—ACTION ON CREDIT INDEMNITY POLICY—DEFENSES—
WARRANTIES IN APPLICATION—ESTOPPEL.
    That the defendant indemnity company's auditor examined plaintiff's
books two months after he made his application containing warranties as
to outstandings did not prevent defendant from setting up the falsity of
such warranties as a defense where it appeared that the examination
was not with reference to the policy sued on, and the auditor testified
that he did not examine the condition of outstanding accounts.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 968–997; Dec.
Dig. ☞378.]

    Smith and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Edward C. Moore Company against the American
Credit Indemnity Company of New York.  From judgment for plain-
tiff and denial of new trial, defendant appeals.  Reversed, and verdict
directed for defendant.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
DOWLING, and SMITH, JJ.

Walter J. Rosenstein, of New York City, for appellant.
Don R. Almy, of New York City, for respondent.

LAUGHLIN, J.   I am unable to agree with the views expressed
by Mr. Justice SMITH with respect to the construction of the provi-
sions of the application, which by the terms of the policy were made

warranties, and with respect to the effect of some of the evidence, and I think the judgment and order should be reversed.

[1] In the first place, the uncontroverted evidence shows that the word "outstandings" embraces, not only accounts unpaid, but bills receivable, including notes for unpaid accounts. The plaintiff represented that the amount of its outstandings was *about* $325,000. The evidence shows that there were about $365,000, or $40,000 more than represented. The court, however, instructed the jury, as matter of law, that this was not a misrepresentation, but the correctness of that ruling is not presented for decision. The court ruled that the evidence presented a question of fact as to whether there was a breach of warranty with respect to the amount of outstandings past due, and the amount of outstandings under extension. I am of opinion that, as matter of law, the evidence showed a breach of each of these warranties. The outstandings represented in the application to be about $325,000, but which were, in fact, about $365,000, included $46,055.45 in open accounts which were past due, and notes for $191,357.22 which were either renewal notes or renewals of renewal notes for unpaid accounts, all of which accounts were past due, but the notes were not due, and they clearly represented outstandings under extension. It thus appears that about two-thirds of the outstandings were past due, and more than one-half were under extension. There was no evidence, therefore, I think, requiring the submission of the case to the jury; for upon no theory would a jury be warranted in saying that two-thirds is only a small proportion of three-thirds, or that there were no outstandings under extension when more than one-half were under extension. I am of opinion that the warranty with respect to outstandings under extension related to the same outstandings covered by the first warranty, in which the total amount thereof was called for, and not to the outstanding open accounts past due.

[2] The construction of these provisions of the warranty cannot be extended by the testimony of the defendant's soliciting agent; for it was provided in the policy that:

"No person other than the president or secretary of the company has authority or power to change or alter or modify any of the terms or provisions of this bond, or to waive any right of the company thereunder, and no such change, alteration, modification, or waiver shall be valid or effective, unless it is made in writing over the signature of the president or secretary. Nor shall knowledge on the part of or notice to any agent or any representative other than the president or secretary, whether before or after the execution of this bond, estop or debar the company from enforcing any of the provisions of this bond, or be held to be a waiver thereof."

I am of opinion that there is no basis in the evidence for the contention that the defendant was estopped from claiming a breach of these warranties. That was predicated upon evidence tending to show that the defendant's soliciting agent represented that the filling out of the blanks in this written application was a mere matter of form, which was, I think, erroneously submitted to the jury.

[3] It is further contended now that the defendant was estopped owing to the fact that its auditor examined the books of the plaintiff some two months after the application was made, and thereby was

afforded an opportunity to discover the manner in which the plaintiff was doing business and the extent to which its accounts and bills receivable were outstanding; but it appears that that examination was not made with reference to this policy, but with respect to a policy issued for the preceding year. The auditor testified that he did not examine the condition of the outstanding accounts, and therefore it cannot be said that the defendant, with knowledge of the breaches of the warranties, ratified the policy.

The judgment and order should therefore be reversed, and a verdict directed in favor of the defendant, on its motion for a direction of a verdict at the close of the evidence, to which an exception was duly taken.

Judgment and order reversed, with costs, and verdict directed for defendant as stated in opinion. Order filed.

INGRAHAM, P. J., and CLARKE, J., concur.

SMITH, J. (dissenting). This action is upon a credit indemnity policy. Plaintiff has recovered judgment for $15,000, the amount of the policy. Defendant challenges the judgment upon the ground that two warranties in the plaintiff's application were breached.

Three warranties were made in the application: First, that the outstandings of the plaintiff amounted to about $325,000; second, that the amount of outstandings past due amounted to a small proportion; and, third, that there were no outstandings under extension. The second and third of these representations, made warranties by the policy, are alleged to have been untrue.

The amount of outstandings, including accounts due and bills receivable, was about $365,000. The first representation that they amounted to about $325,000 is not challenged. The bills receivable amounted to $270,000. Although many of these were renewals of former notes, none of them were due at the time of the application. The accounts receivable amounted to $95,000. Of these $58,000 were past due at the time the application was made. The court properly left to the jury to say whether, within the meaning of the application, $58,000 was more than a small proportion of $365,000 actually outstanding.

A more serious question arises in respect of the third representation, to the effect that there were no outstandings under extension. The application was taken by one Treat, who was a brother of the president of the defendant company, and was named upon the defendant's stationery as its general agent. The proof would seem to indicate, however, that his agency was limited; at least that he was not an agent with power to issue policies, but only to report applications to the company, which itself issued these policies. When these representations were made, Treat asked the plaintiff's officers what was the amount of their outstandings, saying that it was a mere matter of form, and that it need only be approximate, and they told him about $325,000. Treat then asked how much of the outstandings were past due, and they stated a small proportion. Plaintiff's testimony is

that this phrase was at Treat's suggestion. Treat then asked how many past dues had been extended. Plaintiff asked what he meant, and he said, "How many of these past dues have been extended to a definite time for payment?" and plaintiff answered, "None." This evidence is the evidence of Treat himself. The fact appears that of the $270,000 of bills receivable many were renewal notes and renewals of renewals, some of them reaching back a number of years. If these renewal notes are to be deemed outstandings under extension, it is clear that the plaintiff's warranty has been broken. The question asked in the application as to the amount of "outstandings under extension" is in the phraseology of the defendant company, and, if there be ambiguity in the meaning of this phrase by which the plaintiff has been misled in making its answer, the defendant is not fairly entitled to claim that the warranty has been broken by an incorrect answer. While by a technical interpretation a renewal note is an outstanding under extension, it cannot be said that the interpretation of the question is entirely free from doubt, and when, in addition, the soliciting agent of the defendant, in response to the plaintiff's request as to what was meant by the expression, stated that it referred to "these past dues which had been extended to a definite time," the plaintiff was fairly justified in interpreting the expression as referring to the past dues which had been considered in the answer to the former question, that is, the $58,000 spoken of as a small proportion of the amount of outstandings. As to these the representation was true. That it was not understood by either party to refer to the renewal notes seems to me clear. In every business with outstandings amounting to $325,000, as was stated in answering the first question, some bills receivable must be renewal notes, and this fact must be deemed to have been so understood by the parties. When, therefore, the plaintiff answered that question and stated that there were no outstandings under extension, Treat must have known, and the company upon receiving the application must fairly be deemed to have known, that the renewal notes were not understood to be included in this representation. This conclusion is further strengthened by the fact that within two months from the time this application was made the defendant's auditor examined the plaintiff's books, and there found the exact situation. After that examination no objection was made that the condition of the company had been falsely represented, and the defendant, with knowledge of the fact of the existence of these renewal notes at the time the application was made, treated the policy as a valid policy, and advised with the plaintiff as to what course to pursue in reference to certain debtors who had gone into bankruptcy.

The question here is not whether an agent, with full knowledge of a misrepresentation in an application, may waive the effect of that misrepresentation, but whether a company is bound by the interpretation of an ambiguous clause in an application, made to the applicant by an agent authorized to solicit that insurance. In our judgment, the company is so bound, both by reason and authority. Bennett v.

Insurance Co., 81 N. Y. 273, 37 Am. Rep. 501; Standard Insurance Co. v. Fraser, 76 Fed. 705, 22 C. C. A. 499.

The judgment and order should be affirmed, with costs.

DOWLING, J., concurs.